# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: The Honorable Timothy M. Reif, Judge**

| | |
|---|---|
| GUIZHOU TYRE CO., LTD., and GUIZHOU TYRE IMPORT AND EXPORT CO., LTD., <br><br>  Plaintiffs, <br><br> CHINA MANUFACTURERS ALLIANCE LLC, SHANGHAI HUAYI GROUP CORPORATION LIMITED, and QINGDAO JINHAOYANG INTERNATIONAL CO., LTD., <br><br>  Consolidated-Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br>  Defendant. | Court No.: 19-00032 <br><br> PUBLIC DOCUMENT |

## CONSOLIDATED PLAINTIFFS' COMMENTS ON THE COMMERCE DEPARTMENT'S FINAL RESULTS OF REDETERMINATION

Matthew P. McCullough

Curtis Mallet-Prevost, Colt & Mosle LLP
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
202-452-1717

Counsel for Consolidated Plaintiffs

**Dated: October 29, 2021**

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................1

ARGUMENT ....................................................................................................................................3

I.    COMMERCE'S REDETERMINATION CONTINUES TO IGNORE THE OVERRIDING MANDATE OF THE STATUTE REGARDING BENCHMARK ADJUSTMENTS FOR PREVAILING MARKET CONDITIONS AND OTHERWISE SEEKS TO CONFUSE THE FACTS AND DOUBLE COIN'S ARGUMENT ..................................................................3

A.    Commerce's Redetermination Does Not Adhere To The Statute's Prescription On Prevailing Market Conditions In The Market In Question And Therefore Fails To Calculate A CVD Margin As Accurately As Possible ...........4

B.    Commerce's Redetermination Fails To Address The Meaning Of Critical Statutory Terms .................................................................................................5

C.    Commerce's Attempts To Justify Its Approach Merely Seek To Confuse Issues And Facts ..................................................................................................8

    1.    Commerce confuses supply conditions in China with price conditions in China to wrongly justify use of delivered import prices in all comparisons ...............................................................8

    2.    The Court's ruling in *Guizhou Tyre Co. v. United States* is not determinative ..............................................................................10

    3.    An adjustment to reflect prevailing delivery charges could take many forms utilizing a ratio or other means and serves the purpose of ensuring an accurate margin calculation ............................11

II.    COMMERCE HAS COMPLETELY DISCREDITED ITS CONTINUNING ATTEMPTS IN THIS PROCEEDING TO JUSTIFY APPLCIATION OF ADVERSE FACTS AVAILABLE IN RELATION TO THE EXPORT BUYERS CREDIT PROGRAM AND SHOULD FIND NO USE OF THE PROGRAM ........................................................................................................13

CONCLUSION ...............................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Albemarle Corp. v. United States*,
  821 F. 3d 1345 (Fed. Cir. 2016) .................................................................................... 4

*Borusan Mannesmann Boru Sanayi Ve Ticaret v. United States*,
  61 F. Supp. 3d 1306 (Ct. Int'l Trade 2018) ..................................................................... 4

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) ........................................................................................................ 6

*Guizhou Tyre Co. Ltd., v. United States*,
  Court No. 19-00032, Slip Op. 21-64 (CIT May 19, 2021) ................................... 1, 2, 3

*Guizhou Tyre Co., Ltd. v. United States*,
  389 F. Supp. 3d 1315 (Ct. Int'l Trade 2019) ............................................................ 3, 10

*Lasko Metal Prods, Inc. v. United States*,
  43 F.3d 1442 (Fed. Cir. 1994) ......................................................................................... 4

*Timex V.I., Inc. v. United States*,
  157 F.3d 879 (Fed. Cir. 1998) ......................................................................................... 6

*TMK IPSCO v. United States*,
  222 F. Supp. 3d 1306 (Ct. Int'l Trade 2017) ................................................................... 3

**Statutes**

19 U.S.C. § 1677 .................................................................................................... passim

**Regulations**

19 C.F.R. § 351.511 ................................................................................. 2, 5, 9, 12

**Administrative Determinations**

*Certain Mobile Access Equipment and Subassemblies Thereof From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 57809 (October 19, 2021) ........................................................................................................ 14

*Truck and Bus Tires from the People's Republic of China: Final Affirmative Countervailing Duty Determination, Final Affirmative Critical Circumstances Determination, in Part*, 82 Fed. Reg. 8606 (January 27, 2017) .................................................................................. 1

**INTRODUCTION AND SUMMARY OF ARGUMENT**

On May 19, 2021, this Court issued its opinion in *Guizhou Tyre Co. Ltd., v. United States*, Court No. 19-00032, Slip Op. 21-64 (CIT May 19, 2021) (*Remand Order*). In that opinion, the Court remanded to the U.S. Department of Commerce (Commerce) its determination in *Truck and Bus Tires from the People's Republic of China: Final Affirmative Countervailing Duty Determination, Final Affirmative Critical Circumstances Determination, in Part*, 82 Fed. Reg. 8606 (January 27, 2017) (*Final Determination*) and accompanying Issues and Decision Memorandum (IDM) to reconsider the following issues: (1) Commerce's application of adverse facts available (AFA) to the grants presented by Guizhou Tyre Co. Ltd., and Guizhou Tyre Import and Export Co. Ltd (Guizhou Tyre) at the company's verification; (2) Commerce's application of AFA with respect to the Export Buyer's Credit (EBC) program; (3) Commerce's calculation of benchmarks regarding ocean freight and import duties in relation to certain less than adequate remuneration (LTAR) programs; (4) whether Commerce considered quantity as an element when evaluating benchmark prices for synthetic rubber; and (5) Commerce's decision not to assign Qingdao Jinhaoyang International Co., Ltd. (Jinhaoyang) a combination cash deposit rate. *Remand Order* at 141-144. On July 23, 2021, Commerce released to the parties draft results of redetermination. Consolidated Plaintiffs filed comments with Commerce on the draft results on August 6, 2021. Commerce subsequently filed its Final Results of Redetermination (*Redetermination*) with the Court on August 30, 2021.

With this submission, Consolidated Plaintiffs address two of Commerce's redetermination findings with the Court. Specifically, Consolidated Plaintiffs will focus on (1) Commerce's findings with respect to its treatment of ocean freight and import duties in the calculation of benchmarks to measure less than adequate remuneration (LTAR) programs and (2)

Commerce's application of AFA with respect to the EBC program. On both issues Commerce's redetermination is not supported by substantial evidence and contrary to law.

With respect to the benchmark issue, the Court instructed Commerce to explain its "decision to reject Double Coin's supply ratio argument and apply the full delivery costs of ocean freight and import duties to its adjustment calculation." *Remand Order* at 122. But Commerce's *Redetermination* does not provide a legally defensible explanation. The statute provides that "the adequacy of remuneration *shall* be determined in relation to prevailing market conditions for the good or service being provided or the goods being purchased in the country which is subject to the investigation or review. Prevailing market conditions include price, quality, availability, marketability, transportation, and other conditions of purchase or sale." 19 U.S.C. § 1677(5)(E)(iv) (emphasis added). In its explanation dismissing Double Coin's supply ratio arguments Commerce has neither identified prevailing market conditions in China nor constructed an accurate delivered price in relation to such prevailing market conditions in China, contrary to the statute. Instead, it identified misplaced concerns based on an unreasonable application of 19 C.F.R. § 351.511(a)(2)(iv) and the use of delivered import prices as benchmarks at the complete expense of a statutory mandate to take prevailing market conditions in China into account to adjust market benchmarks. Commerce otherwise appears consumed by ensuring benchmarks reflect a whole delivered price in each comparison. But a supply ratio approach or some other approach could achieve the same lawful result applied in ways that do not directly affect benchmarks used in actual comparisons. Commerce has simply refused to try or otherwise comply with what the statute requires it to do.

With respect to the EBC program and Commerce's application of AFA, the Court found that Commerce failed to explain the reason that information regarding operation of the program

purportedly missing from the record was critical to verify a company's claims of non-use, and failed to articulate the reasons that customer certifications of non-use were impossible to verify. *Remand Order* at 79.  However, in its *Redetermination* Commerce has not offered legitimate explanations to either of these two points.  Consistent with the now long list of cases where the CIT has rejected Commerce's rationales for applying AFA to the program at issue, Commerce should find no use of the program.  Consolidated Plaintiffs incorporate by reference the more detailed arguments of Plaintiff Guizhou Tyre regarding this issue submitted in this proceeding.

## ARGUMENT

I. **COMMERCE'S REDETERMINATION CONTINUES TO IGNORE THE OVERRIDING MANDATE OF THE STATUTE REGARDING BENCHMARK ADJUSTMENTS FOR PREVAILING MARKET CONDITIONS AND OTHERWISE SEEKS TO CONFUSE THE FACTS AND DOUBLE COIN'S ARGUMENT**

In its *Remand Order*, the Court instructed Commerce to explain its "decision to reject Double Coin's supply ratio argument and apply the full delivery costs of ocean freight and import duties to its adjustment calculation."  Remand Order at 122.  And while Commerce has "broad discretion" to determine how to adjust the benchmark price to reflect delivery charges, it cannot employ an unreasonable adjustment.  *See Guizhou Tyre Co., Ltd. v. United States*, 389 F. Supp. 3d 1315, 1326 (Ct. Int'l Trade 2019) ("Guizhou IV") (quoting *TMK IPSCO v. United States*, 222 F. Supp. 3d 1306, 1320 (Ct. Int'l Trade 2017)).  It is otherwise axiomatic that the reasonableness of any adjustment must be judged in relation to the prescriptions of the governing statute.  Commerce's *Redetermination*, however, pays little attention to the statute and does not advance the issue identified by the Court any further than its failed effort from the original determination.

### A. Commerce's Redetermination Does Not Adhere To The Statute's Prescription On Prevailing Market Conditions In The Market In Question And Therefore Fails To Calculate A CVD Margin As Accurately As Possible

Any assessment of Commerce's *Redetermination* must begin with two fundamental points of law.  First, the statute provides that "the adequacy of remuneration *shall* be determined in relation to prevailing market conditions for the good or service being provided or the goods being purchased in the country which is subject to the investigation or review.  Prevailing market conditions include price, quality, availability, marketability, transportation, and other conditions of purchase or sale." 19 U.S.C. § 1677(5)(E)(iv) (emphasis added).  The obligation is mandatory.  Commerce "shall" determine.  Second, Commerce has an inherent obligation under the statute to calculate a countervailing duty margin "as accurately as possible." *See, e.g., Borusan Mannesmann Boru Sanayi Ve Ticaret v. United States*, 61 F. Supp. 3d 1306, 1337 (Ct. Int'l Trade 2018); *Albemarle Corp. v. United States*, 821 F. 3d 1345, 1354 (Fed. Cir. 2016); *Lasko Metal Prods, Inc. v. United States*, 43 F.3d 1442, 1443 (Fed. Cir. 1994) ("{I}t is Commerce's duty to determine margins as accurately as possible. . .").

Commerce's response to these statutory commands in its *Redetermination* is a non-sequitur:

> As an initial matter, Commerce believes that the adjustments made to the benchmarks in this investigation reflect prevailing market conditions and provide an accurate delivered price as stipulated in to 19 CFR 351.511(a)(2)(iv) of the regulations.  For example, when calculating these benchmark prices, Commerce relied upon actual ocean freight data from the POI sourced from Maersk.  As such, Commerce has relied upon benchmarks reflecting market conditions.

*Redetermination* at 36.  Commerce has neither identified prevailing market conditions in China nor constructed an accurate delivered price in relation to such prevailing market conditions in China.  The fact that Commerce used Maersk data and these data "are reflecting market

- 4 -

conditions" says nothing about whether they reflect *prevailing market conditions in China* for delivered product, which can only be assessed on the basis of the circumstances of *availability* and *transportation* of such product in China, including the relative presence of imports and domestic supply.  As such, Commerce has not demonstrated how it has complied with the statute and therefore how it calculated a countervailing duty margin "as accurately as possible" in relation to the statute's command.

      **B.**      **Commerce's Redetermination Fails To Address The Meaning Of Critical Statutory Terms**

Commerce's *Redetermination* avoids any textual analysis of 19 U.S.C. § 1677(5)(E)(iv) Instead, Commerce feigns ambiguity in the statutory terms, claiming complete discretion for itself.  Based on a mere quotation of the provision and nothing more, it simply asserts that "{b}eyond this, the Act provides no other guidance or methodology for how Commerce should measure the adequacy of remuneration, which means we are left to rely on the language stipulated in our regulations at 19 C.F.R. § 351.511 to calculate benchmarks." *Redetermination* at 80-81.  As such, Commerce continues to suggest that its regulation is controlling.  And while Commerce's regulation calls for the use of "delivered" prices reflecting "the price that a firm actually paid or would pay if it imported the product," 19 C.F.R. § 351.511(a)(2)(iv), we reiterate that Commerce's regulation must be tempered by the statute since mechanical application of the regulation would violate the statute's command that Commerce take into account prevailing market conditions in the market under investigation when setting benchmarks.  It is not sufficient to simply conclude that a decision to include import duties and ocean freight to the benchmark used in every LTAR price comparison is "consistent with our regulations." *Redetermination* at 36 and 81.  It has to be consistent with the statute, and the meaning of statutory terms matter.

Commerce's complete lack of textual analysis of 19 U.S.C. § 1677(5)(E)(iv) cannot be excused. When addressing statutory terms, one starts with their plain meaning. *See Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9 (1984)). An examination of the plain meaning of the terms used in 19 U.S.C. § 1677(5)(E)(iv) reveals that Commerce's unwavering reliance on delivered import prices to measure the adequacy of remuneration of the good under examination is untenable. The terms are unambiguous and instructive.

In addressing the adequacy of remuneration for the provision of goods the statute refers to "the goods" generally and does not limit itself to "imported goods." Indeed, the statute's focus is not on the origin of any specific good, but the conditions of the market in which "the goods" are sold. 19 U.S.C. § 1677(5)(E)(iv). This immediately raises doubts about the propriety of a regulation, or at least an interpretation of a regulation, that requires the use of delivered import prices as an LTAR benchmark in all circumstances. But what truly undermines Commerce's position is the statute's reference to "prevailing market conditions" for the good being purchased in the market under investigation. It is these "prevailing market conditions" that must shape any LTAR benchmark. The adequacy of remuneration must be determined "in relation" to these conditions. *Id*. "Prevailing" is an adjective. Its root is the verb "prevail," which is defined, *inter alia*, as "to gain ascendancy through strength or superiority", "to be or become effective or effectual," or "to be frequent." *See* Meriam Webster Dictionary (online), https://www.merriam-webster.com/dictionary/prevail. As an adjective, "prevailing" refers to something "existing at a particular time; current," or "having most appeal or influence; prevalent." LEXICO, https://www.lexico.com/en/definition/prevailing. Synonyms include "current, existing, prevalent, usual, common, most usual, commonest, most frequent, general,

mainstream, widespread, rife, in circulation." LEXICO,

https://www.lexico.com/synonyms/prevailing.

Thus, the statute directs Commerce to consider *how* a good is present in the market under investigation, including the conditions that *prevail or predominate* with respect to that presence. This would include conditions of availability with respect to domestic and import supply, as well as the applicable transportation and other delivery charges. Any LTAR benchmark would be determined *in relation* to these prevailing or predominant conditions. But that is not what Commerce did in its *Redetermination*.

To illustrate Commerce's failure to give meaning to statutory terms, consider the example of carbon black. The record shows that imports of carbon black were just 2.17 percent of Chinese apparent consumption of that input. *See* Analysis of Market Distortion in the Markets for Carbon Black, Nylon Cord, Synthetic Rubber and Butadiene, and Natural Rubber, Attachment, at 2 (P.R. 344). In other words, 98 percent of apparent consumption of carbon black in China is served by domestic production, including from 52 of 57 producers not owned by the Government of China, *id.*, where neither import duties nor ocean freight would ever apply. There would be few better examples of a prevailing or predominant market condition. Yet, Commerce created an LTAR benchmark for each of the 12 months of the period of investigation comprised of the following components: (1) a world market price for carbon black; (2) applicable VAT; (3) ocean freight; and (4) import duties. *See* Double Coin Amended Final Determination Calculations at Tab "Carbon Black LTAR Benchmark" (C.R. 429, P.R. 481). It then utilized these 12 monthly benchmarks, and only these benchmarks, across nearly 600 monthly comparisons with Double Coin's purchases of carbon black to measure the adequacy of remuneration. *Id*. at Tab "DC Carbon Black" (C.R. 429, P.R. 481). Thus, through these

benchmarks and comparisons Commerce's is effectively stating that import supply of carbon black prevails or predominates in the Chinese market. Indeed, Commerce is effectively saying that *only* import supply exists in the Chinese market. But this is not what the record reflects, and therefore demonstrates Commerce's failure to give meaning to key statutory terms.

### C. Commerce's Attempts To Justify Its Approach Merely Seek To Confuse Issues And Facts

To deflect from it clear obligations under the statute, Commerce's Redetermination simply seeks to confuse issues and facts in an effort to justify Commerce's applied benchmark. But none of Commerce's arguments survive scrutiny.

#### 1. Commerce confuses supply conditions in China with price conditions in China to wrongly justify use of delivered import prices in all comparisons

Commerce claims that is has "no reliable basis" to calculate a supply ratio in this proceeding to adjust delivery charges, noting that it has found that all the domestic suppliers of the inputs to Double Coin and Guizhou Tyre are "authorities" within the meaning of section 771(5)(B) of the Act. *Redetermination* at 36. Indeed, Commerce seems to ultimately suggest that all such suppliers in the market were found to be "authorities," *Redetermination* at 79-80, an assertion not supported by Commerce's determination. *See* IDM at 18 (finding that GOC-owned producers accounted for 31.02 percent of domestic production) (P.R. 474). According to Commerce, this fact renders domestic figures not viable for calculating such a ratio. *Id*. Commerce's rationale is not valid.

First, whether or not suppliers of inputs to Double Coin and Guizhou Tyre are authorities (or all suppliers for that matter) within the meaning of section 771(5)(B) of the Act has no bearing on the volumes of domestic and imported supply in the market. Commerce is confusing

its discretion to discard purchase prices of goods from authorities for benchmark calculation purposes, which focuses on the price of the input, 19 C.F.R. § 351.511(a)(2)(i), with its separate consideration of the relative portions of supply in the market for benchmark adjustment purposes. This is apparent in the following passage from Commerce's Redetermination:

> In this proceeding, we find that all domestic transactions are from "authorities" and thus do not serve as an accurate reflection of market based transactions. Thus, when considering "availability" for purposes of selecting a benchmark, we find there are no domestic prices available. In other words, the prevailing market conditions indicate that there are no viable domestic prices, and as such, there is no reason to calculate a ratio to adjust import prices to account for non-existent domestic supply prices, as the prices are not available.

Redetermination at 81. There are a number of problems with this passage.

First, Plaintiffs are not challenging whether domestic prices for the good can be used for benchmark purposes and accept Commerce's decision to select a surrogate world market price for the good as the best appraisal of the market price.

Second, the fact that domestic prices for the good cannot be used as a benchmark does not mean domestic supply of the good does not exist in the market and would be subject to distinct (and prevailing) conditions of delivery that would <u>not</u> include either ocean freight or import duties. Importantly, Commerce's investigation involved the provision <u>of the inputs</u> for less than adequate remuneration, <u>not</u> the provision of delivery services and associated charges. Thus, Commerce is simply missing the point by linking its decision to forgo any adjustment to its benchmark to account for conditions of *domestic supply*, including availability and transportation, to its finding that there are no viable *domestic prices* of the good. And Commerce cannot claim that there are no viable inland freight prices, as it used such prices in its benchmark

- 9 -

calculation.  *See* Double Coin Amended Final Determination Calculations at Tab "Carbon Black

LTAR Benchmark" (C.R. 429, P.R. 481).

Third, Commerce's linking of the statutory condition of "availability" to price is

erroneous.  "Price" is a separate condition in the statute that does not diminish or obviate

Commerce's obligation to make adjustments for conditions of "availability", *e.g,*, the level of

domestic supply.  Finally, Commerce appears to be arguing that Plaintiffs seek an adjustment to

its world market price.  That is grossly misleading.  The issue is not Commerce's selected world

market price for *the good* in question, but what delivery charges should apply to that price in

light of prevailing conditions of availability and transportation in the Chinese market.

### 2. The Court's ruling in *Guizhou Tyre Co. v. United States* is not determinative

Commerce wrongly relies on the ruling in *Guizhou Tyre Co. v. United States*, 389 F.

Supp. 3d 1315 as support.  *Redetermination* at 37.  However, as noted in our briefs before the

Court, the reasoning in *Guizhou Tyre Co.* reflected an obvious misunderstanding of facts and

Commerce's methodology.  In that case, the court found that because Commerce had applied

AFA in concluding that suppliers in China where authorities, Commerce did not need to make

adjustments to ocean freight and import duties to reflect the level of domestic supply in China.

389 F. Supp. 3d at 1326-27.  Specifically, the court concluded that to allow a supply ratio

adjustment to ocean freight and import duties would include the plaintiff's domestic purchases

that were found to be an inappropriate comparative for benchmarking.  *Id.*

The court's reasoning in *Guizhou Tyre Co.* misapprehends the Department's analysis and

the proposed adjustment.  A supply ratio adjustment for ocean freight and import duties would

not introduce any of the respondents' domestic purchase prices into the benchmark price.  The

benchmark price for the good in question would remain precisely as constructed by Commerce. The supply ratio adjustment addresses how that benchmark should be adjusted to reflect a "delivered price" as reflected in Commerce's regulations. The adjustments themselves – ocean freight and import duties –have nothing to do with the respondents' domestic purchases of the good, just external charges incident to delivery of the good not subject to any subsidy allegation. Nor were there any AFA findings related to these adjustments which remained distinct from the price of the good itself. Indeed, as shown by the record of this case Commerce does in fact utilize a distinct inland freight price in its delivered benchmark price. *See* Double Coin Amended Final Determination Calculations at Tab "Carbon Black LTAR Benchmark" (C.R. 429, P.R. 481). The supply ratio adjustment would simply take into account the degree these adjustments should be applied based on prevailing conditions of supply in the Chinese market and the extent to which the market is supplied by imports. None of this implicates any AFA finding by Commerce regarding the status of the respondents' suppliers or infects the benchmark price with domestic purchase prices of the respondents, but it does recognize the statutory mandate to take market conditions into account. Contrary to Commerce's claim, this does not lead to a distorted benchmark.

> **3.     An adjustment to reflect prevailing delivery charges could take many forms utilizing a ratio or other means and serves the purpose of ensuring an accurate margin calculation**

Commerce argues that even if it "were to find the figures to calculate the ratio appropriate, it is unclear how this ratio offered by Double Coin would accurately reflect the price that a firm actually paid or would have paid if it imported the input under consideration." Commerce's purported concern is that if it were to apply such a ratio, "it would be lowering the import duties and freight prices based on the domestic and import supply." As such, it contends

that "such a ratio would arbitrarily lower these duties and prices with no clear purpose." *Redetermination* at 37. These concerns are all misplaced and based on Commerce's unreasonable application of 19 C.F.R. § 351.511(a)(2)(iv) and the use of delivered import prices as benchmarks at the complete expense of a statutory mandate to take prevailing market conditions in China into account to adjust market benchmarks. This includes taking into account the degree to which domestic production supplies the market and therefore would not be subject to ocean freight and import duties. That is a clear purpose required by the statute, as is the clear purpose (and obligation) to calculate a countervailing duty margin as accurately as possible. For example, when Commerce assumes that every purchase transaction is an import transaction, and adds applicable import duties and ocean freight, when prevailing market conditions demonstrate only very limited import supply, that necessarily inflates any benefit calculation and therefore results in a demonstrably avoidable inaccuracy in the margin calculation.

Finally, Commerce appears consumed by ensuring benchmarks reflect a whole delivered price, and therefore reducing import duties and ocean freight in those benchmarks by a supply ratio would undermine its regulation (setting aside the fact that application of which in avoidance of the statute and prevailing market conditions still remains unlawful). *Redetermination* at 35-37. But the supply ratio could achieve the same lawful result applied in ways that do not directly affect benchmarks used in actual comparisons. For example, the supply ratio could be used to limit the number of individual comparisons where import duties and ocean freight are included to an absolute number of transactions or some volume based number of transactions equal to the supply ratio. Similarly, the supply ratio could be applied after the fact to the aggregate amount of ocean freight and import duties incorporated in the comparisons, the result of which could then be used to reduce the total calculated benefit from all comparisons. But the fact remains

Commerce cannot excuse itself from finding solutions with claims that such adjustments serve no clear purpose or are impossible to imagine.  Commerce has engaged in any of number of methodological / calculation exercises to achieve its purposes under the law far more complex than the one at hand.  And it remains the case that "the adequacy of remuneration *shall* be determined in relation to prevailing market conditions for the good or service being provided…" 19 U.S.C. § 1677(5)(E)(iv) (emphasis added).

II.   **COMMERCE HAS COMPLETELY DISCREDITED ITS CONTINUNING ATTEMPTS IN THIS PROCEEDING TO JUSTIFY APPLCIATION OF ADVERSE FACTS AVAILABLE IN RELATION TO THE EXPORT BUYERS CREDIT PROGRAM AND SHOULD FIND NO USE OF THE PROGRAM**

With respect to Commerce's application of adverse facts available ("AFA") regarding the export buyers credit program, in its Remand Order the Court found that Commerce failed to explain the reason that information regarding operation of the program purportedly missing from the record was critical to verify a company's claims of non-use, and failed to articulate the reasons that customer certifications of non-use were impossible to verify.  Remand Order at 79.  In its Redetermination, Commerce has not offered legitimate explanations to either of these two points.  Indeed, Commerce has expended enormous resources and time in this action defending a position that it has itself discredited.  *See Certain Mobile Access Equipment and Subassemblies Thereof From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 57809 (October 19, 2021), IDM at Comment 5, p. 55 ("{W}e issued supplemental questionnaires and questionnaires in lieu of onsite verification to each mandatory respondent and their U.S. customers, requesting additional information regarding its financing activities. We received complete responses from the respondents, and, consequently, as facts available, we find that neither Dingli nor LGMG – or their U.S. customers used the program.").  Consistent with the now long list of cases where the CIT has rejected Commerce's

rationales for applying AFA to the program at issue, Commerce should revise its draft redetermination and find no use of the program. CMA and Double Coin incorporate by reference the more detailed arguments of Guizhou Tyre regarding this issue submitted in its separate comments to the Court.

## CONCLUSION

For these reasons, Commerce's Redetermination remains unlawful and unresponsive to the Court's instructions. It must revise its benchmarks to account for the degree to which domestic supply of the inputs in question is available in the Chinese market. It should also decline to apply AFA and find no use of the export buyers credit program.

Respectfully Submitted,

/s/ Matthew P. McCullough

Matthew P. McCullough

**Curtis, Mallet-Prevost, Colt & Mosle, LLP**
1717 Pennsylvania Avenue, NW
Washington, DC 20006

*Counsel to China Manufacturers Alliance and Shanghai Huayi Group Corporation Limited*

## Word Count Certificate of Compliance

This brief has been prepared utilizing Microsoft Word 2010 using a proportionally spaced typeface 12-point Times New Roman font.

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 4786 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Matthew P. McCullough

Matthew P. McCullough
**Curtis, Mallet-Prevost, Colt & Mosle, LLP**
1717 Pennsylvania Avenue, NW
Washington, DC 20006

*Counsel China Manufacturers Alliance and Shanghai Huayi Group Corporation Limited*

October 29, 2021